T.C. Summary Opinion 2009-77


UNITED STATES TAX COURT


GARY W. AND REGINA G. STEELE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 1344-06S.                Filed May 14, 2009.


Gary W. and Regina G. Steele, pro sese.

<u>John M. Tkacik, Jr.</u>, for respondent.


RUWE, <u>Judge</u>:  This case was heard pursuant to the provisions

of section 7463[1] of the Internal Revenue Code in effect when the

petition was filed.  Pursuant to section 7463(b), the decision to

---

[1] Unless otherwise indicated, all section references are to
the Internal Revenue Code (Code) in effect for the year in issue,
and all Rule references are to the Tax Court Rules of Practice
and Procedure.

be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency of $4,095 in petitioners' 2002 Federal income tax. The issues we must decide are:

(1) Whether petitioners are entitled to certain deductions and credits for 2002, including:

(a) A deduction for alleged contributions to separate individual retirement accounts (IRAs);

(b) a deduction for student loan interest paid;

(c) a credit for the payment of qualified educational expenses; and

(d) a deduction for claimed itemized deductions;

(2) whether petitioners have correctly reported all their income, specifically whether they included:

(a) A State income tax refund; and

(b) distributions from petitioners' separate IRA accounts;

(3) whether petitioners are liable for the section 72(t) 10-percent additional tax for early distributions from their IRAs;

(4) whether petitioners are entitled to deductions for certain expenses made on behalf of and transactions entered into with the Estate of Janice M. Steele (the estate), including:

(a) A payment made to prevent foreclosure on real property held by the estate;

(b) expenses paid to maintain and to allegedly convert the real property into rental real property;

(c) a capital loss deduction on the sale of the real property held by the estate;

(d) a theft loss and related legal fees paid to investigate and settle disputes concerning the estate; and

(e) a deduction for a nonbusiness bad debt for an alleged loan made to the estate; and

(5) whether petitioners are entitled to a dependency exemption deduction for petitioner Regina G. Steele's minor sister.

## Background

There are no written or oral stipulations by the parties. The exhibits received into evidence are incorporated by this reference. When the petition was filed, petitioners resided in Ohio.

Petitioners are husband and wife. Petitioners timely filed their 2002 Form 1040, U.S. Individual Income Tax Return (tax return), on which they reported wages of $42,148, taxable interest of $654, a capital loss of $3,000, and aggregate IRA distributions of $4,081.[2] On Schedule A, Itemized Deductions,

_____

[2] Petitioners reported only $2,081 of the IRA distributions as taxable.

petitioners claimed expenses of $15,242[3] for medical and/or dental expenses, $4,287 for taxes paid, $7,632 for qualified residence interest paid, and $7,900 for charitable contributions.[4] Petitioners' claimed itemized deductions totaled $32,407. For 2002 petitioners also claimed a $4,000 deduction for IRA contributions and a $2,500 deduction for student loan interest paid.

On November 10, 2005, respondent issued to petitioners a notice of deficiency (notice). In the notice respondent disallowed most of petitioners' claimed deductions for lack of substantiation and further adjusted petitioners' income for erroneously reported IRA distributions and an unreported State income tax refund. Respondent's adjustments are as follows:

2002 Tax Year
Income Tax Examination Changes

| Adjustments to Income | Per Return | Per Exam | Adjustment |
| --- | --- | --- | --- |
| IRA deduction | $4,000 | -- | $4,000 |
| IRA distributions | 2,081 | $4,081 | 2,000 |
| State refunds, credits, or offsets | -- | 386 | 386 |

---

[3] After application of the 7.5-percent floor, in accordance with sec. 213, petitioners claimed a $12,588 itemized deduction for medical and/or dental expenses.

[4] On brief respondent concedes that in 2002 petitioners paid $2,991 for deductible medical expenses, $4,533 for taxes, and $8,838.57 for qualified residence interest. Respondent further concedes that petitioners made charitable contributions of $1,265.

| | | | |
|---|---|---|---|
| Student loan interest deduction | 2,500 | -- | 2,500 |
| Capital gain or loss | (3,000) | -- | 3,000 |
| Itemized deductions | 32,407 | 12,683 | 19,724 |
| Total adjustments to income | -- | -- | 31,610 |
| Taxable income per return | -- | -- | (3,024) |
| Corrected taxable income | -- | -- | 28,586 |
| Tax (joint filing status) | -- | -- | 3,686 |
| Plus other taxes (tax on qualified plans) | -- | -- | 409 |
| Total corrected tax liability | -- | -- | 4,095 |

After filing the tax return, petitioners submitted two Forms 1040X, Amended U.S. Individual Income Tax Return (amended returns), dated June 1, 2004, and December 5, 2005, respectively. Respondent received the amended returns but did not accept or process them. On the first amended return petitioners claimed a rental loss of $54,303 on Schedule E, Supplemental Income and Loss, reduced their taxable IRA distribution from $2,081 to $81, claimed income of $5,000 for fiduciary fees, eliminated the $4,000 deduction for IRA contributions, and reduced their claim for a student loan interest deduction from $2,500 to $450. On the second amended return petitioners included a State income tax refund of $386, eliminated the capital loss, eliminated the student loan interest deduction, reduced the Schedule E rental loss from $54,303 (as reported on the first amended return) to $35,928, and claimed an additional dependency exemption deduction

for petitioner Regina G. Steele's (Mrs. Steele's) minor sister (RMW).[5]

The Schedule E rental losses reported on petitioners' amended returns relate to real property located on Warrendale Road in South Euclid, Ohio (Warrendale property). The Warrendale property was owned by Janice M. Steele, the mother of petitioner Gary W. Steele (Mr. Steele). Janice M. Steele died on April 11, 2001. After her death the Warrendale property was listed in the name of "The Estate of Janice M. Steele". The Inventory and Appraisal Form filed on August 27, 2001, with the probate court of Cuyahoga County, Ohio, listed the value of the Warrendale property at $95,000. On January 31, 2002, the estate sold the Warrendale property for $90,000. Mr. Steele was both a beneficiary and the executor of the estate.

## Discussion

Generally, the Commissioner's determinations are presumed correct and the taxpayer bears the burden of proving that the determinations are in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to the deductions claimed. Rule 142(a); INDOPCO, Inc. v.

---

[5] The Court refers to minor children by their initials. See Rule 27(a)(3).

Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

Section 6001 requires taxpayers to maintain records, statements, and returns and to comply with such rules and regulations as the Secretary prescribes. Individual taxpayers are to keep permanent books and records sufficient to verify income, deductions, or other matters required to be shown on any information or tax return. Sec. 1.6001-1(a), Income Tax Regs.

In accordance with section 7491(a) the burden of proof may be shifted to the Commissioner where a taxpayer has introduced credible evidence regarding factual issues relevant to ascertaining his tax liability. Rule 142(a)(2). In order for a taxpayer to shift the burden of proof to the Commissioner he must produce credible evidence evincing that he has: (1) Complied with the substantiation requirements of the Code; (2) maintained all records required by the Code; and (3) cooperated with reasonable requests by the Secretary for witnesses, information, documents, meetings, and interviews. Sec. 7491(a)(2). Petitioners have not asserted nor do we find that they have met these requirements; thus, the burden of proof remains with petitioners.

I. Certain Deductions Claimed on the Tax Return

    A. IRA Contribution Deduction

Section 219(a) provides: "In the case of an individual, there shall be allowed as a deduction an amount equal to the qualified retirement contributions of the individual for the taxable year." For 2002 the maximum deduction allowed is the lesser of $3,000 or an amount equal to the compensation includable in the individual's gross income for the taxable year. Sec. 219(b). The deduction may be further limited if an individual or the individual's spouse is an active participant in a retirement plan maintained by his employer. Sec. 219(g).

On the tax return petitioners claimed a $4,000 IRA contribution deduction. In the notice respondent determined that petitioners were not entitled to an IRA contribution deduction.

On both of the amended returns petitioners eliminated the claim for an IRA contribution deduction. Furthermore, petitioners have neither offered any documentary or testimonial evidence to substantiate any portion of the alleged IRA contributions nor established whether they were active participants in an employer-provided retirement plan. See sec. 219(g).

Because they failed to produce evidence to establish their eligibility for an IRA contribution deduction, we hold that

petitioners are not entitled to deduct any amounts contributed to IRAs for tax year 2002.

B. <u>Student Loan Interest Deduction</u>

Section 221(a) provides: "In the case of an individual, there shall be allowed as a deduction for the taxable year an amount equal to the interest paid by the taxpayer during the taxable year on any qualified education loan." For 2002 the maximum allowable deduction for interest paid on a qualified education loan was $2,500. Sec. 221(b)(1). The allowable deduction is further limited by the taxpayer's modified adjusted gross income. Sec. 221(b)(2).

On the tax return petitioners claimed a $2,500 student loan interest deduction. In the notice respondent determined that petitioners were not eligible for that deduction. On the first amended return petitioners reduced their student loan interest deduction claim to $450. On the second amended return, however, petitioners eliminated their claim for a student loan interest deduction.

At trial petitioners again asserted that they had paid student loan interest and were entitled to a corresponding deduction. Petitioners stated that they had consolidated their student loan in 2001 and had "$13,000 worth of accrued interest." In an attempt to substantiate their claim, petitioners provided a statement dated June 11, 2008, from Sallie Mae. The Sallie Mae

statement was addressed to Mrs. Steele, but the payment history shows only the last five payments made, all of which were made in 2008, and does not show what portion of the payments was attributable to the payment of student loan interest.

In any event, other than vague self-serving testimony petitioners have failed to proffer any evidence establishing that they actually paid student loan interest during 2002. Accordingly, we hold that petitioners are not entitled to a student loan interest deduction in 2002.

C. Education Credits

Section 25A(a) provides: "In the case of an individual, there shall be allowed as a credit against the tax imposed by this chapter for the taxable year the amount equal to the sum of --(1) the Hope Scholarship Credit, plus (2) the Lifetime Learning Credit."

Petitioners first claimed a credit for qualified education expenses paid in 2002 at trial when they asserted: "we qualify for the Hope Credit and Lifetime Credit." To substantiate their eligibility, petitioners submitted a copy of a receipt showing that they paid $277.80 to Cuyahoga Community College in 2002.

At trial and on brief respondent has acknowledged and conceded that petitioners substantiated $277.80 of qualified education expenses for 2002. On brief respondent states: "The amount allowable as a credit, if any, is a computational

adjustment based on petitioners' modified adjusted gross income."
See sec. 25A(b), (c), and (d). Accordingly, we find that
petitioners have substantiated that they paid $277.80 of
qualified education expenses in 2002 and, therefore, are entitled
to a corresponding educational credit subject to the limitation
provided in section 25A(d).

D. <u>Itemized Deductions</u>

On Schedule A of the tax return petitioners claimed $32,407
of itemized deductions, which included $12,588 of medical and/or
dental expenses, $984 of real property taxes, $2,553 of State and
local income taxes, $750 of personal property taxes, $7,632 of
qualified residence interest, and $7,900 of charitable
contributions. Petitioners' first amended return increased their
claimed itemized deductions to $37,206. Petitioners' second
amended return reduced their claimed itemized deductions to
$29,187. In the notice respondent reduced petitioners' itemized
deductions to $12,683.

Not only have petitioners failed to explain the reasons for
the changes made from their initial tax return, but they have
also failed to produce any evidence establishing entitlement to
any of the claimed itemized deductions. On brief, however,
respondent concedes that petitioners are entitled to itemized
deductions as follows: $2,991 for medical and/or dental
expenses; $4,533 for taxes paid; $8,838 for qualified residence

interest paid; and $1,265 for charitable contributions. Accordingly, we hold that petitioners are entitled to itemized deductions in the amounts respondent conceded.

## II. Unreported and Underreported Income

Gross income includes all income from whatever source derived, including accessions to wealth, clearly realized, and over which the taxpayers have complete dominion. Sec. 61(a); Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431 (1955).

### A. State Income Tax Refund

In the notice respondent determined that petitioners had unreported income because of their failure to report a $386 State income tax refund. At trial Mrs. Steele stated: "right after we'd mailed our [Federal income] tax return * * * we got a statement in the mail saying that we had a tax refund of $386 from the State." Inexplicably, however, petitioners did not include the State income tax refund on the first amended return. They did, however, finally report it on the second amended return. We interpret petitioners' statements, actions, and failure to contend otherwise as conceding that their $386 State income tax refund is includable in gross income and so find.

### B. IRA Distributions

A distribution from an IRA is includable in gross income in the manner provided in section 72 unless rolled over within 60

days after the distribution is received into another IRA or an eligible retirement plan. See secs. 72, 408(d)(1), (3).

Both petitioners received Forms 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., for 2002. Mr. and Mrs. Steele received IRA distributions of $2,035 and $2,046, respectively. On the tax return petitioners reported $4,081 of IRA distributions but claimed only $2,081 as taxable. On the amended returns petitioners reported $4,081 of IRA distributions but claimed only $81 as taxable. In the notice respondent determined that petitioners had failed to adequately establish that any portion of the $4,081 of IRA distributions was rolled over and, therefore, the entire amount is includable in petitioners' gross income.

The documentary evidence consisted of a letter prepared for respondent wherein petitioners alleged that they rolled over Mrs. Steele's IRA distribution into "a qualified savings account plan" at Dollar Bank and that Mr. Steele's IRA distribution was used to pay for medical premiums, and a photocopy of a check payable to Dollar Bank for the benefit of Mrs. Steele. At trial Mrs. Steele testified that they did not believe the IRA distributions were taxable because, as she stated: "We used the funds to pay for medical expenses." On brief petitioners continue to assert that

they rolled over Mrs. Steele's IRA distribution and Mr. Steele's IRA distribution was used to "cover documented medical expenses."

While a determination of whether the funds from the IRA distributions were used to pay eligible medical expenses is relevant for determining whether the section 72(t) 10-percent additional tax applies, it has no bearing on whether the distributions are includable in petitioners' gross income. See sec. 72.

Petitioners have failed to adequately establish that any portion of the IRA distributions was rolled over into either an IRA or some other eligible retirement plan. See sec. 408(d)(3). Although petitioners provided a copy of Mrs. Steele's distribution check, which indicated that the funds were payable to Dollar Bank for her benefit, other than their self-serving testimony petitioners have offered nothing to substantiate that the account the money was allegedly deposited into at Dollar Bank was either an IRA or an eligible retirement plan account.

Accordingly, we hold that in accordance with section 72(a) petitioners' IRA distributions of $4,081 are includable in their gross income for 2002.

III. 10-Percent Additional Tax on Premature Distributions

Section 72(t)(1) provides:

> (1) Imposition of additional tax.--If any taxpayer receives any amount from a qualified retirement plan

(as defined in section 4974(c)),[6] the taxpayer's tax under this chapter for the taxable year in which such amount is received shall be increased by an amount equal to 10 percent of the portion of such amount which is includible in gross income.

Exceptions to this rule are found in section 72(t)(2). Applicable to petitioners' contention that they used a portion of their IRA distributions to pay for medical expenses is section 72(t)(2)(B), which provides:

(B) Medical expenses.--Distributions made to the employee * * * to the extent such distributions do not exceed the amount allowable as a deduction under section 213[7] to the employee for amounts paid during the taxable year for medical care (determined without regard to whether the employee itemizes deductions for such taxable year).

In the notice respondent determined that petitioners were not eligible for an exception to the section 72(t) 10-percent additional tax and adjusted petitioners' tax liability to include an additional $409.[8]  At trial Mrs. Steele testified that the funds from both IRA distributions were used to pay medical

---

[6] Sec. 4974(c) defines the term "qualified retirement plan" to include, inter alia, an IRA.  See sec. 4974(c)(4).

[7] Sec. 213 allows as a deduction the expenses paid during the taxable year, not compensated for by insurance or otherwise, for medical care of the taxpayer, his spouse, or a dependent, to the extent that such expenses exceed 7.5 percent of adjusted gross income.

[8] The record is not clear as to how respondent determined that 10 percent of the $4,081 distributed from petitioners' IRAs is $409.

expenses and therefore petitioners are not liable for the 10-percent additional tax.  See sec. 72(t)(2)(B).

While petitioners have failed to substantiate any medical expenses paid, on brief respondent concedes that petitioners are entitled to a $2,991 deduction for medical expenses paid in 2002. Respondent's concession leads us to the conclusion that this amount represents the portion of paid medical expenses that exceeds 7.5 percent of petitioners' adjusted gross income.  See sec. 213.  Thus, we conclude that the portion of petitioners' IRA distributions that does not exceed the deduction allowed under section 213 is excepted from the 10-percent additional tax under section 72(t).  See sec. 72(t)(2)(B).

IV.  <u>Expenses Paid on Behalf of the Estate</u>

A.  <u>$5,150 Payment To Prevent Foreclosure on the Warrendale Property</u>

Petitioners assert they are entitled to a $5,150 deduction in 2002 for funds allegedly paid to Aurora Loan Service in 2001 to prevent foreclosure of the Warrendale property.  Petitioners raised this issue for the first time at trial; neither petitioners' tax return, the amended returns, nor the notice addresses this alleged payment.  At trial petitioners asserted that the $5,150 payment should qualify either as a real property taxes paid deduction or a qualified residence interest deduction.

The scant documentary evidence petitioners proffered does not establish that they actually paid $5,150 to prevent

foreclosure on the Warrendale property.  The only evidence they provided consisted of a letter dated September 17, 2001, addressed to "Mr. & Mrs. Gary Steele" at what purports to be the Warrendale property address, confirming "that the amount to REINSTATE the loan through September 30, 2001 is $5,739.53", and a photocopy of the customer's copy of a $5,150 cashier's check, dated September 8, 2001, payable to Aurora Loan Service.  Both the letter and the photocopy of the cashier's check refer to the same loan number, but neither document establishes that this loan number pertains to the Warrendale property.  Furthermore, even assuming that this loan number pertains to the Warrendale property, petitioners have not established that the $5,150 cashier's check was drawn on their personal account (as opposed to the estate's account) or that Aurora Loan Service received the funds.  In fact, the partial accounting of the fiduciary's account filed with the probate court of Cuyahoga County, Ohio, shows the estate, rather than petitioners, paid mortgage payments of $7,674.53 on September 18, 2001.

Even if petitioners had established that they actually paid $5,150 to prevent foreclosure on the Warrendale property, petitioners have not established their eligibility for either a real property taxes paid deduction or a qualified residence interest paid deduction in 2002 for the alleged payment.

Section 164(a)(1) generally allows a deduction for the payment of real property taxes for the taxable year within which paid. It is well established that, in general, taxes paid on real property may be deducted as such only by the person on whom the tax obligation is imposed. Cramer v. Commissioner, 55 T.C. 1125, 1130 (1971); sec. 1.164-1(a), Income Tax Regs. Petitioners have not established that it was their obligation, as opposed to the decedent's or the estate's, to pay any real property taxes to prevent foreclosure on the Warrendale property. Moreover, petitioners have not substantiated what portion, if any, of the alleged $5,150 payment was for real property taxes.

Section 163 allows as a deduction all interest paid within the taxable year on indebtedness. Section 163(h)(1), however, provides: "In the case of a taxpayer other than a corporation, no deduction shall be allowed under this chapter for personal interest paid * * * during the taxable year." For this purpose, personal interest does not include "any qualified residence interest". Sec. 163(h)(2)(D). Section 1.163-1(b), Income Tax Regs., provides: "Interest paid by the taxpayer on a mortgage upon real estate of which he is the legal or equitable owner, * * * may be deducted as interest on his indebtedness." However, we need not determine whether petitioners were either legal or equitable owners of the Warrendale property because they have likewise failed to substantiate what portion, if any, of the

alleged $5,150 payment was attributable to the payment of qualified residence interest.

Furthermore, section 461(a) provides that deductions "shall be taken for the taxable year which is the proper taxable year under the method of accounting used in computing taxable income." Since petitioners are cash method calendar year taxpayers, they may not claim as a deduction on the tax return an expense they allegedly paid in 2001. See id.; sec. 1.461-1(a), Income Tax Regs.

Accordingly, we hold that petitioners are not entitled to a deduction for the alleged $5,150 payment made to prevent foreclosure on the Warrendale property.

B.  Expenses Paid for the Maintenance and Conversion of the Warrendale Property

On the amended returns petitioners claimed entitlement to deductions for various Schedule E expenses related to the maintenance and conversion of the Warrendale property into rental property.  On the first amended return petitioners claimed Schedule E expenses totaling $54,303, including $10,033 for depreciation or depletion expenses.  On the second amended return petitioners reduced their Schedule E expenses to $35,928, in part by eliminating depreciation or depletion expenses.  At trial and on brief petitioners argued that as beneficiaries of the estate they were entitled to a deduction for maintenance and conversion

costs because the estate, which would have been eligible to claim it, did not.

Petitioners, however, have failed to adequately substantiate that either they or the estate paid the expenses reported on Schedule E. Petitioners have not submitted any receipts or other documentary evidence that establishes that they paid the expenses listed on the respective Schedules E. Petitioners' failure to substantiate their claimed Schedule E expenses necessarily leads to our conclusion that they are not entitled to deduct any of the claimed Schedule E expenses in 2002. Therefore it is unnecessary to consider whether petitioners could qualify for any deduction of the claimed expenses under section 642(h).

C. <u>Capital Loss Deduction</u>

On their initial 2002 Schedule D, Capital Gains and Losses, petitioners reported both a $1,500 short-term capital loss carryover and a $1,500 long-term capital loss carryover. In the notice respondent disallowed the entire capital loss deduction for lack of substantiation. On the Schedule D attached to the first amended return petitioners reported a short-term capital loss carryover of $15,000 and a long-term capital loss carryover of $15,000 but limited the deductible loss to $3,000 in accordance with section 1211(b). On the Schedule D attached to the second amended return petitioners reported zero short-term capital losses and left blank the line for long-term capital

gains and losses. At trial and on brief, however, petitioners asserted entitlement to a capital loss deduction for the sale of the Warrendale property despite the fact that the property was sold by the estate. Petitioners assert that as beneficiaries of the estate they are entitled to deduct a capital loss on capital assets sold by the estate.

On January 31, 2002, the estate sold the Warrendale property for $90,000.[9] Petitioners, however, have failed to establish the estate's basis in the Warrendale property.

Section 1014(a)(1) provides: "the basis of property in the hands of a person[10] acquiring the property from a decedent or to whom the property passed from a decedent shall * * * be--(1) the fair market value of the property at the date of the decedent's death". In an attempt to establish the basis of the Warrendale property petitioners offered a letter written by an attorney, which states in part:

> My check of the pertinent records indicates that the valuation of the property will be in the neighborhood of $100,000. To complete my appraisal of this property, you need to forward the original Inventory

---

[9] Petitioners contend that the sale of the Warrendale property resulted in a long-term capital loss of $20,000 ($75,000 price minus the alleged $95,000 fair market value on Apr. 11, 2001). However, the U.S. Department of Housing and Urban Development Settlement Statement shows that the estate sold the property for $90,000, not $75,000.

[10] Sec. 7701(a)(1) provides: "The term 'person' shall be construed to mean and include an * * * estate".

and Appraisal Form to my attention for me to affix my
appraisal evaluation of the property.

The attached inventory and appraisal form shows the value of the
Warrendale property as $95,000, but the accompanying appraiser's
certificate is unsigned; and there is no indication as to whether
$95,000 is the alleged fair market value on April 11, 2001, or
some other date.[11]  Because petitioners have failed to establish
the fair market value of the Warrendale property on the date of
the decedent's death, we are unable to determine whether a
capital loss occurred upon the sale of the Warrendale property.

We note again that even if we were to assume the date of
death fair market value of the Warrendale property was $95,000,
petitioners have not established that any resulting loss was
theirs as opposed to the estate's.  Petitioners may not deduct on
the tax return losses or expenses incurred by the estate.

Accordingly, we hold that petitioners are not entitled to a
capital loss deduction in 2002 from the sale of the Warrendale
property by the estate.

D.  <u>Theft Loss Deduction and Related Legal Fees</u>

Petitioners did not claim deductions for a theft loss and
the related legal fees on either the tax return or the amended
returns.  Petitioners first claimed these deductions at trial.

---

[11] The Inventory and Appraisal Form filed with the probate
court of Cuyahoga County, Ohio, is stamped "filed" on Aug. 27,
2001.  The other random dates that appear on the form are Apr. 19
and 25, 2001, and Sept. 19, 2001.

On brief petitioners continue to assert that they are entitled to both a theft loss deduction and a deduction for the payment of legal fees incurred in their attempt to recover the allegedly stolen funds. On brief respondent asserts that "there is no evidence in the record as to the amount of the funds withdrawn or that a theft occurred."

The limitation on deductions for losses under section 165 generally allows an individual a deduction for a loss arising from theft. See sec. 165(c)(3). A loss that arises from theft is treated as sustained during the taxable year in which the taxpayer discovers such loss. See sec. 165(e). For this purpose, theft is generally defined as larceny, embezzlement, or robbery. Sec. 1.165-8(d), Income Tax Regs.

For tax purposes, whether a theft loss has occurred depends upon the law of the jurisdiction wherein the particular loss occurred. Monteleone v. Commissioner, 34 T.C. 688, 692 (1960). The statutory definition of theft in Ohio is as follows:

> (A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
>
> (1) Without the consent of the owner or person authorized to give consent;
>
> (2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;
>
> (3) By deception;

(4) By threat;

(5) By intimidation.

(B)(1) Whoever violates this section is guilty of theft.  [Ohio Rev. Code Ann. sec. 2913.02 (Lexis Nexis 2006).]

Two days before her death, Mr. Steele's mother signed and executed a form adding both her minor son (DS) and DS's grandmother, Ms. Gillum, to her accounts maintained at Key Bank. After her death the joint bank accounts were allegedly liquidated by Ms. Gillum and DS.  Petitioners contend that Ms. Gillum and DS did not have the proper authority to withdraw the funds from the bank accounts.  Mr. Steele filed complaints with both Key Bank and the Beachwood police department alleging that Ms. Gillum either deceived his mother into signing or forged her signature on the forms that added both Ms. Gillum and DS to the joint bank accounts.

Other than their allegation, petitioners have failed to produce any evidence establishing that Mr. Steele's mother was deceived, threatened, or intimidated into executing the form which added DS and Ms. Gillum to the joint bank accounts.  See id.  Thus, we hold that petitioners have not met their burden of proving that they are entitled to a theft loss deduction.

Additionally, petitioners contend that they are entitled to a deduction for legal fees paid in an attempt to recover the allegedly stolen funds.  Petitioners hired an attorney to assist

in recovering the allegedly stolen funds.  While no charges for theft were ever filed, petitioners' efforts resulted in a settlement agreement between DS and Mr. Steele as administrator of the estate.

The record indicates that the estate, rather than petitioners, paid the attorney $6,560.  Although a photocopy of the $6,560 check, payable to the attorney, was entered into evidence, there is no indication as to whether it was drawn on petitioners' bank account.  The Final and Distributive Account Form filed with the Cuyahoga County, Ohio, probate court, indicates that the estate paid the attorney $6,560 for legal services.  Petitioners have failed to substantiate that they actually paid legal fees to recover the allegedly stolen funds during 2002.

Again, petitioners are claiming entitlement to a deduction for an expense paid by the estate, to which they have not established entitlement as beneficiaries.  Accordingly, we hold that petitioners are not entitled to a deduction for legal fees paid to recover the alleged theft loss.

E.  <u>Nonbusiness Bad Debt Deduction</u>

Petitioners did not claim a nonbusiness bad debt deduction on either the tax return or the amended returns.  Petitioners first claimed a nonbusiness bad debt deduction at trial.  On brief petitioners continue to assert that they are entitled to a

nonbusiness bad debt deduction because they were not able to recover any of the money lent to the estate before its insolvency.  On brief respondent contends that petitioners have not established that the alleged funds were ever transferred to the estate or that a loan actually existed between petitioners and the estate.

Section 166(a) generally allows a deduction for any debt which becomes worthless within the taxable year.  Section 166(d) provides:

> SEC. 166(d).  Nonbusiness Debts.--
>
> (1) General rule.-- In the case of a taxpayer other than a corporation--
>
>> (A) subsection (a) shall not apply to any nonbusiness debt; and
>>
>> (B) where any nonbusiness debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 1 year.

Petitioners allege that they wrote a $13,914.22 check to the estate as a loan to be repaid by December 31, 2002.  Petitioners assert that the $13,914.22 check constituted a loan between petitioners and the estate, that the debt became worthless in March 2002, and that they are entitled to a nonbusiness bad debt deduction.  Respondent contends that the debt did not become worthless in March 2002 because petitioners' bank statement shows the $13,914.22 was not withdrawn from petitioners' bank account

until April 25, 2002, and the record is devoid of any evidence that the $13,914.22 check was ever deposited into an account owned by or transferred to the estate.

Petitioners provided a photocopy of a $13,914.22 check payable to the order of the "Estate of Janice Steele". However, there is no further evidence in the record to indicate that the estate received these funds. The final and distributive account form filed with the probate court of Cuyahoga County neither lists petitioners as creditors of the estate nor indicates that the $13,914.22 was received by the estate.

Even assuming that a bona fide loan existed between petitioners and the estate, petitioners have failed to establish that the debt became worthless in 2002. The estate was not closed until April 4, 2003, and any assets that remained in the estate would have been available to pay the debt until the estate's termination.

Thus we hold that petitioners have failed to establish entitlement to a nonbusiness bad debt deduction.

V.  Dependency Exemption Deduction

For the purpose of computing taxable income, section 151(a) allows an individual to claim an exemption deduction for a dependent. A dependent is defined as follows:

SEC. 152.  DEPENDENT DEFINED.

(a) General Definition.--For purposes of this subtitle, the term "dependent" means any of the

following individuals over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer (or is treated under subsection (c) or (e) as received from the taxpayer):

\*      \*      \*      \*      \*      \*      \*

(3) A brother, sister, stepbrother, or stepsister of the taxpayer,

In determining whether an individual received over one-half of his or her support from the taxpayer, "the amount of support received from the taxpayer as compared to the entire amount of support which the individual received from all sources, including support which the individual himself supplied" must be considered. Sec. 1.152-1(a)(2)(i), Income Tax Regs. Petitioners bear the burden of demonstrating the total amount of the child's support furnished from all sources for the year at issue. See Blanco v. Commissioner, 56 T.C. 512, 514 (1971). If the total support is not shown and cannot be reasonably inferred from the competent evidence available, then it is not possible to conclude that petitioners furnished more than one-half of RMW's support. See id. at 514-515.

Petitioners did not claim RMW as a dependent on the tax return or on the first amended return. Only on the second amended return did petitioners claim RMW as a dependent.

Although petitioners allege they provided over one-half of RMW's support in 2002, they have failed to prove the total

support furnished to RMW from all sources in 2002.  The only evidence petitioners proffered was a summary of expenses estimating their dependent care expenses at $9,483 and a statement allegedly made by RMW that she received her financial support from Mrs. Steele in 2002.  Petitioners testified that RMW also resided with Mrs. Steele's brother in 2002.  According to their summary of expenses, petitioners claimed to have provided support for RMW for approximately 10 months during 2002. However, petitioners have not provided any substantiating documents, such as receipts, canceled checks, copies of mortgage or rent payments, or copies of utility bills, of either their alleged expenses or the total expenses paid for RMW's support in 2002.

Without adequate substantiation of both RMW's total support in 2002 and the portion of that support furnished by petitioners, we cannot conclude from the record that petitioners provided more than one-half of RMW's support.  See Manukainiu v. Commissioner, T.C. Memo. 1998-90.  Accordingly, we find that petitioners are not entitled to a dependency exemption deduction for RMW in 2002.

To reflect the foregoing,

Decision will be entered

under Rule 155.